UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF NEW JERSEY – CAMDEN**

| | |
|---|---|
| **CHRISTOPHER RADEL**<br>　　　　　　　**Plaintiffs,**<br>**v.**<br><br>**SOUTH WOODS STATE PRISON, THE NEW JERSEY DEPARTMENT OF CORRECTIONS, ET AL.**<br><br>　　　　　　　**Defendants** | Docket No.<br>**1:22-cv-04697-CPO-MJS**<br><br><u>Civil Action</u> |

ELECTRONICALLY FILED

**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO</u>**

**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**LAWRENCE A. KATZ**
**LENO LAW GROUP**
**Counsel for Plaintiff**
BEOWULF BUILDING
1814 East Route 70 - Suite 321
Cherry Hill, NJ 08003
Phone: 856.652.2000  EXT 497
Fax: 856.375.1010
Email:  lakatz@lentolawgroup.coooom

# TABLE OF CONTENTS

| | |
|---|---|
| QUESTION BEFORE THE COURT | 1 |
| INTRODUCTION | 3 |
| STATEMENT OF FACTS | 3 |
| STANDARD OF REVIEW | 4 |
| ARGUMENT | 4 |
| POINT I:    PLAINTIFF HAS MET HIS BURDEN UNDER HIS "FAILURE TO PROTECT" CLAIM, AND THEREFORE, SUMMARY JUDGMENT MUST BE DENIED | 4 |
| POINT II:    STATE LAW CLAIMS | 12 |
| POINT III:  EXCESSIVE USE OF FORCE | 13 |
| POINT IV:  PLAINTIFF'S FAILURE TO PROTECT CLAIM PREVAILS BECAUSE PLAINTIFF ESTABLISHED THAT THE DEFENDANTS HAD A REASONABLE OPPORTUNITY TO INTERVENE AND REFUSED TO DO SO. | |
| POINT V.   QUALIFIED IMMUNITY | 15 |
| POINT VI:  SUMMARY JUDGMENT SHOULD BE DENIED FOR CLAIMS OF COMPENSATORY DAMAGES | 16 |
| CONCLUSION | 18 |

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

*Farmer v. Brennan*,
    511 U.S. 825 (1994) .................................................................................................. 4, 5, 16

*Helling v. McKinney*,
    *509 U.S. 25 (1993)* .................................................................................................... 5, 6

*Hudson v. Palmer*,
    468 U.S. 517 (1984) ...................................................................................................... 16

**Federal Court Opinions**

*Anderson v. Dohman*,
    No. 23-2603, 2024 U.S. App. LEXIS 19461 (3d Cir. Aug. 5, 2024) .................................................. 15

*Blackstone v. Thompson*,
    368 F. App'x 82 (3d Cir. 2014) ................................................................................. 11-12

*Doty v. Hollingsworth, Civ.*
    No. 15-3016, 2018 U.S. Dist. LEXIS 50414, 2018 WL 1509082 (D.N.J. Mar. 27, 2018) ................ 16

*Jaludi v. Citigroup*,
    933 F.3d 246 (3d Cir. 2019) ....................................................................................... 4

*Le Pape v. Lower Merion Sch. Dist.*,
    103 F.4th 966 (3d Cir. 2024) ...................................................................................... 4

*Young v. Experian Info. Sols., Inc.*
    119 F.4th 314 (3d Cir. 2024) ...................................................................................... 4

**United States Code**

42 U.S.C. § 1997 ................................................................................................ 16, 17

**State Cases**

*Brenman v. Demello*,
    191 N.J. 18 (2007) ..................................................................................................... 17

*Tabuteau v. London Guarantee & Acci. Co.*,
    40 A.2d 396 (Pa. 1945) ............................................................................................... 17

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................... 4

## **QUESTION BEFORE THE COURT**

The United States Supreme Court has held that prison officials have a duty to protect prisoners from violence at the hands of other prisoners. The Supreme Court has also held that a prison official may be held liable under the Eighth Amendment if they know that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. In this case, the Inmate twice alerted prison officials that his cellmate posed a serious risk of harm to him. However, two different prison guards ignored the Inmate's pleas for protection and required the Inmate to remain in his cell with his dangerous cellmate. As a result of this deliberate indifference to the safety of the Inmate, the Inmate was viciously assaulted, including being bitten multiple times. The Inmate filed a lawsuit alleging that this failure to protect him from known dangers violated his constitutional rights. This Honorable Court must decide whether summary judgment should be denied, where the Inmate presents evidence that he alerted two guards that

his cellmate posed a threat to his personal safety, but the

guards ignored his pleas and did nothing to protect him.

<u>SUGGESTED RESPONSE</u>:   Yes.   Summary judgment

should be denied.

## INTRODUCTION

When the evidence is viewed in the light most favorable to Radel, the non-moving party, it establishes that two prison officials, Lt. Carty and Officer Mercado, had *actual* knowledge that Radel's inmate, Butler, posed a dangerous threat to Radel's safety, but neither Carty nor Mercado did anything to protect Radel from his dangerous cellmate. On the contrary, both prison officials were deliberately indifferent to the threat Radel complained about. As a result, Butler assaulted Radel, causing serious injuries.

It is interesting that the Defendants' Motion barely addresses Radel's plea that Mercado not require him to return to his cell because Butler had just attacked him, Mercardo's ignoring the plea and forcing Radel to return to his cell, and the vicious attack moments after Radel returned to his cell as ordered.

Because the evidence, when viewed in favor of Radel, demonstrates that the two prison officials had actual knowledge that Butler posed a danger to Radel, but took no actions to keep him safe, resulting in Butler assaulting Radel, summary judgment should be denied.

## STATEMENT OF FACTS

Plaintiff has filed a Response to Defendants' Statement of Material Facts Not in Dispute. Plaintiff will not merely repeat his responses. However, Plaintiff will present the facts as appropriate during the argument.

## STANDARD OF REVIEW

"Under Rule 56, a 'court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). Applying that standard  . . .a 'district court should only grant [the] motion ... if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law.' *Jaludi v. Citigroup*, 933 F.3d 246, 251 n.7 (3d Cir. 2019) (internal quotation marks omitted).  *Young v. Experian Info. Sols., Inc*. 119 F.4th 314 (3d Cir. 2024); *see also*, *Le Pape v. Lower Merion Sch. Dist*., 103 F.4th 966, 977 (3d Cir. 2024)("We review all facts in the light most favorable to the non-moving party and draw 'all justifiable inferences . . . in [its] favor.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255.)

## ARGUMENT

**POINT I:   PLAINTIFF HAS MET HIS BURDEN UNDER HIS "FAILURE TO PROTECT" CLAIM, AND THEREFORE, SUMMARY JUDGMENT MUST BE DENIED**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the United States Supreme Court held as follows:

1. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment.  *Id*. at 820.

2. The Eighth Amendment requires that prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 822.

3. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. at 822.

4. "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 823.

5. "[A] prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. at 823.

6. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health,' Helling, 509 U.S. at 35, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id*. at 843.

7. "Under the test we adopt today . . . it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 828.

8. "[A] prison official may be held liable under the Eighth Amendment . . .if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Synthesized to its basic requirements, a prison official violates an Inmate's right to be protected from violence from other prisoners if the prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. This is precisely what happened in this case.

When the evidence, and reasonable inferences from it, are viewed in the light most favorable to Radel, the following facts exist:

1. Radel twice reported to prison officials his fear of his cellmate Butler, and of the urgent need to be moved to a different cell. Both requests were refused.

2. On June 25, 2020, using an internal email Kiosk, Plaintiff requested that his cell be changed because Butler was "very paranoid," accusing Plaintiff several times of tampering or poisoning Butler's food, and Plaintiff's fear that Bulter's condition was "escalating." He concluded, "please move me asap." No one responded to this request for ASAP action for almost one month. On July 20, 2020, Lt. Carty, who responded a month later, denied

the request.  (Exhibit A:  Kiosk Email)  Carty agreed that ASAP means as soon as possible.  However, Carty testified that he neither personally investigated Plaintiff's request nor delegated to anyone the duty to do so before rejecting Plaintiff's request.  He simply presumed there was no continuing problem because the issue had not been raised again.  In fact, Lt. Carty never brought Plaintiff's fear of Butler to any prison officials or personnel.  (Exhibit B – Carty Deposition at 26-29) Had Lt. Carty bothered to investigate the reason that Plaintiff feared Butler, he would have learned, "He was very paranoid. You know, a lot of talk of unnamed people, you know, plotting against him,  out to get him. * * * [H]e would just say like, you know, random remarks, like, I'm going to F him up, stuff like that. And it was usually -- sometimes it was directed at certain people on the unit, sometimes at nobody in particular.  * * *  [H]e was agitated, and he was like getting in my face and, you know, getting loud and being like very aggressive. And both times I was able to calm him. and, you know, I tried to reason with him. * * * There actually was one time where . . . he was watching something on the news. This was actually like during the whole George Floyd thing, and there was a lot of stuff on the news about that. And he was like watching something, a news story, that was talking about like racism.  And he jumped out of his bunk, and he said, Are you a racist,

bunkie? And he came at me, stood over me like he was going to swing. He cocked his fist back. * * * And I was like -- it was upsetting . . ." (Exhibit C – Radel Deposition at 36-40) Sergeant Nathan Canion, who was on duty on the date of the assault, testified that had he received the Email (Exh. "A"), he "would have an obligation to investigate it," including conducting an interview with both inmates. (Exhibit D – Canion Deposition at 24-25) In contrast, Carty completely ignored the Email.

3. The second request to be removed from his cell because of fearing Mr. Butler occurred shortly before the vicious attack. At lunch and before having to go back into his cell with Butler, Plaintiff spoke with Officer Mercado. Plaintiff explained: "So I went up to him, and I said, My bunkie has mental issues, and he's having an episode. He can't find a T-shirt. He's accusing me of taking it. *He threw several punches at me. He hit me in my chest, and I need help. I can't go back in that room*." Plaintiff explained his demeanor when begging Officer Mercado to not return him to his cell with Butler: "I was very scared. I'm sure I was shaking when I went up to him. I was nervous about the whole thing. I was scared about having to go back into the cell with Butler. I was – I tried my best to -- I tried to avoid having to deal with the officers in any way. Like I minded business, and it was kind of a last resort situation to go to the officers for help because I

knew I ran the risk of being labeled a snitch and then having problems with

other people on the unit. And just in general, I didn't want that reputation.

I didn't want to have that reputation, and, you know, I have to live with the

people in the prison. So I was, you know, extremely nervous. I was scared.

* * * Plaintiff specifically told Officer Mercardo, "*He attacked me. I said,*

*"I need help.*" (Radel Dep. at 57, 187)  Officer Mercado simply ordered

Radel back to his cell even though Butler was already in the cell. (Radel

Dep. at 187)    Radel returned to his cell as ordered and was viciously

attacked.

4.  As a result of Butler's assault, Radel sustained several deep and bleeding

bite marks, a fractured nose, infections in the wounds, loosened teeth, jaw

injury, jaw clicking, and other pain. (Radel Dep. at 117-23, 132-42)

The evidence set forth above, when viewed in the light most favorable to

Radel, demonstrates that he has clearly established each element of the Supreme

Court's *Farmer* test.

Both Lt. Carty and Officer Mercado had actual knowledge that Radel faced a

substantial risk of serious harm.

Radel used the inmate Kiosk to "request[] that his cell be changed because

Butler was "very paranoid," accusing Plaintiff several times of tampering or

poisoning Butler's food, and Plaintiff's fear that Bulter's condition was "escalating." He concluded, "please move me asap." Lt. Carty read that email approximately one month later, on July 20, 2020, and Lt. Carty denied the request. (Exhibit A: Kiosk Email) Carty agreed that ASAP means as soon as possible. However, Carty testified that he neither personally investigated Plaintiff's request nor delegated to anyone the duty to do so before rejecting Plaintiff's request. Basically, he did nothing. Thus, even though Lt. Carty had actual knowledge that Radel feared his mentally unstable cellmate whose bizarre behavior was escalating, and requested an ASAP cell change for protection, Lt. Carty not only failed to take reasonable measures to abate the danger, he did absolutely nothing.

Officer Mercado's failure was even more egregious. Radel told Officer Mercardo, "My bunkie has mental issues, and he's having an episode. He can't find a T-shirt. He's accusing me of taking it. *He threw several punches at me. He hit me in my chest, and I need help. I can't go back in that room*." Radel testified, "I was very scared. I'm sure I was shaking when I went up to him. I was nervous about the whole thing. I was scared about having to go back into the cell with Butler. * * * So I was, you know, extremely nervous. I was scared. * * * Plaintiff specifically told Officer Mercado, "*He attacked me. I said, "I need help*." (Radel Dep. at 57, 187) Even though Radel told Officer Mercado that Butler had just taken swings at and attacked him and begged for help and to not go back into the cell with Butler, Officer

- 10 -

Mercado ordered Radel back into his cell. Moments later, Butler viciously attacked Radel. Officer Mercado not only failed to take reasonable measures to abate the danger, but he forced Radel into the cell with the very danger he feared. (While the Defendants suggest Radel could have simply refused to return to the cell, it would have subjected him to prison discipline.) (Radel Dep. at 190)

Under *Farmer*, Radel was denied his Eighth Amendment right to be protected from "violence at the hands of other prisoners." *Farmer* at 822. Both Lt. Carty and Officer Mercado had actual knowledge that Butler was behaving in a dangerous manner, Mercado knew that Butler had just assaulted Radel, both knew that Radel sought ASAP removal from the same cell as Butler and/or not being required to return to the cell with Butler. However, neither Carty nor Mercardo took reasonable measures to abate the danger. In fact, they took no measures to abate the danger. And in the case of Mercado, he actually forced Radel to return to the cell with Butler, the very danger about which he knew.

Accordingly, when properly viewed, the evidence unequivocally establishes that the Defendants' violated Radel's Eighth Amendment rights and that the Farmer test to establish the Defendants' liability has been met. As such, the Motion for Summary Judgment must be denied.

Defendants cite to certain cases in support of their position. However, they are distinguishable and do not support Defendants'' argument. *Blackstone v.*

- 11 -

*Thompson*, 368 F. App'x 82 (3d Cir. 2014), is cited for the proposition that Radel cannot establish a substantial risk of harm. In *Blackstone*, the court held that the plaintiff's vague discomfort did not warn of a risk. In contrast, in this case, Radel not only warned of Butler's escalating mental problems, but he warned that Butler had just assaulted him and was swinging his fists at him. *Bizzell v. Tennis*, 447 F' App 112 (3d Cir. 2011), is cited for the proposition that there must be specific imminent threats. The *Bizzel* court granted summary judgment because the plaintiff's complaints were vague. In contrast, Radel was very specific – Butler was acting paranoid, was mentally unstable, and his condition was escalating. Radel was subject to repeated threats and, just before asking Officer Mercado to protect him, Butler had assaulted Radel. In *Blanchard v. Gallick*, 448 F' App 173 (3d Cir. 2011), the authorities did take reasonable measures to protect the plaintiff by moving the plaintiff to another cell after receiving threats. In contrast, neither Lt. Carty nor Officer Mercado moved Radel to another cell in response to Butler's threats and Butler's actual attack of Radel. They did nothing to protect Radel. Mercado actually forced Radel to return to the cell with Butler who had just attacked him.

## POINT II:  STATE LAW CLAIMS

Plaintiff waives state law claims.

## POINT III: EXCESSIVE USE OF FORCE

Plaintiff waives his "excessive use of force" claim.  However, this explicitly does not waive or limit his failure to protect claim.

## POINT IV: PLAINTIFF'S FAILURE TO PROTECT CLAIM PREVAILS BECAUSE PLAINTIFF ESTABLISHED THAT THE DEFENDANTS HAD A REASONABLE OPPORTUNITY TO INTERVENE AND REFUSED TO DO SO.

Defendants essentially repeat their Point I argument in this Point III.  Plaintiff will not restate his Point I argument in its entirety.

Defendants argue, "Plaintiff's failure to protect claim fails because Moving Defendants did not have a reasonable opportunity to intervene before the physical altercation and actually took reasonable steps to intervene once the physical altercation occurred."

The argument is absurd.  The assault occurred after the inmates returned to their cells from the lunch line on July 23, 2020.  (Defendants' Statement #1; Radel Dep. at 55-57)  On June 25, 2020, Radel used the Kiosk to send his email asking that his cell be changed ASAP because of Butler's behavior .  On July 20, 2020, Lt. Carty responded to the email and denied the cell change request.  Radel reported to Officer Mercado on July 23, 2020, before getting his lunch meal and before returning to his cell, that Butler had attacked him before the cell doors opened to allow the inmates to go to the lunch line, that he feared returning to his cell because of Butler's

mentally unstable behavior and because Butler had just thrown multiple punches at him, striking his chest.

Neither Lt. Carty nor Officer Mercardo took any, let alone reasonable, measures to protect Radel prior to the assault. Contrary to their argument, both had reasonable time to intervene before Butler viscously attacked Radel. Had Lt. Carty moved Radel (or Butler) to a different cell when he read the Kiosk email on July 20, 2020, instead of simply ignoring Radel's request, Radel would not have been attacked. Even more importantly, had Officer Mercado removed Butler from the cell, allowed Radel to go to another cell, or taken any action other than compelling Radel to return to the cell with Butler in it -- even though Radel had begged not to be returned to the same cell because Bulter had just attacked him before they left the cell for the lunch line -- the vicious attack would not have occurred. Both prison officials had sufficient time to protect Radel before he was forced to return to his cell with Butler, but did nothing within that time.

Similarly, prison officials would have had sufficient time to intervene once the assault occurred, had they heeded Radel's warning of what was about to occur when he was returned to his cell with Butler. Mercado could have assigned prison officers to be located at Radel's cell so that they could have responded immediately once the attack occurred. Instead, Radel had to bang on the door to get Mercado's attention, who then had to call an alert, requiring guards to come to the cell from

various locations in the prison. During this delay, Butler viciously attacked Radel. This delay resulted from Mercado's intentional indifference to Radel's warnings and pleas. (Radel Dep. at 78-79; Mercado Dep. at 37-40)

For the reasons set forth above and more fully in Point I, both Carty and Mercardo violated their duties under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners.

## POINT V.   QUALIFIED IMMUNITY

Essentially, repeating their prior arguments in a different form, the Defendants argue that they are entitled to "qualified immunity."

"The analysis of a qualified immunity claim is guided by a two-part test: (1) 'whether the facts . . . show the violation of a legal right' and (2) 'whether that right was clearly established.' *Anderson v. Dohman*, No. 23-2603, 2024 U.S. App. LEXIS 19461, *4 (3d Cir. Aug. 5, 2024)

As to part 1, Plaintiff incorporates his prior arguments, clearly demonstrating that, for purposes of deciding a Motion for Summary Judgment, the Defendants violated Plaintiff's Eighth Amendment right to protection from violence at the hands of other prisoners.

As to part 2, it is indisputable that the right of an inmate to be protected by prison officials from violence at the hands of other prisoners was clearly established during the period June 1, 2020 through July 23, 2020 (from Plaintiff's Kiosk email

until Bulter's vicious attack).  In 1994, relying on its 1984 decision, the Supreme

Court held, "The Amendment also imposes duties on these officials, who must  . . .

'take reasonable measures to guarantee the safety of the inmates,' Hudson v. Palmer,

468 U.S. 517, 526-527, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984)."  *Farmer*, supra,

511 U.S. at 832.  In 2018, the Third Circuit Court of Appeals held, "It seems clear,

then, that the Supreme Court has . . .recognized a failure-to-protect claim under the

Eighth Amendment.  see Doty v. Hollingsworth, Civ. No. 15-3016, 2018 U.S. Dist.

LEXIS 50414, 2018 WL 1509082, at *3 (D.N.J. Mar. 27, 2018) (holding that an

Eighth Amendment failure-to-protect claim premised on inmate-on-inmate violence

is not a new context given sufficient similarity to both Carlson and Farmer)."

There can be no dispute that in 2020, the duty to protect inmates from other

inmates was firmly established in the District of New Jersey, the Third Circuit, and

the entire nation.

Accordingly, the Defendants are not entitled to qualified immunity.

## POINT VI: SUMMARY JUDGMENT SHOULD BE DENIED FOR CLAIMS OF COMPENSATORY DAMAGES

Defendants argue that pursuant to 42 U.S.C. § 1997 e(e), a claim for mental

or emotional injuries cannot be claimed in the absence of physical injuries.  In this

case, Plaintiff had physical injuries.  He testified he sustained several deep and

bleeding bite marks, a fractured nose, infections in the wounds, loosened teeth, jaw

injury, jaw clicking, and other pain.  (Radel Dep. at 117-23, 132-42)

- 16 -

An expert is not necessary to opine that the injuries were caused by the Butler assault.  In an automobile accident, the New Jersey Supreme Court held, "In the main, the fundamental relationship between the force of impact in an automobile accident and the existence or extent of any resulting injuries does not necessarily require "scientific, technical, or other specialized knowledge" in order to "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" *Brenman v. Demello*, 191 N.J. 18, 35 (2007).  This is consistent with Pennsylvania decisions which explain the legal rule more clearly: "expert testimony is not necessary where death (or injury) is so immediately and directly, or naturally and probably, the result of the accident."  *Tabuteau v. London Guarantee & Acci. Co*., 40 A.2d 396, 398 (Pa. 1945).

In this case, an expert witness is unnecessary to assist the jury in understanding that Plaintiff's wounds and scars resulted from being bitten by Butler. Similarly, no expert witness is needed to establish that his broken nose (which did not exist before the attack), loose teeth and clicking jaw (which did not exist before the attack), and eye pain (which did not exist before his attack), were caused by Butler's assault.  (Radel Dep. at 117-23, 132-42)

Accordingly, 42 U.S.C. § 1997 does not preclude Plaintiff's claims for compensatory damages as Plaintiff sustained physical injuries as a result of the Defendants' actions and inactions resulting in the Butler attack.

- 17 -

Accordingly, summary judgment should be denied as it is related to compensatory damages. Plaintiff waives his claim for punitive damages.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary must be denied.

Respectfully submitted,

s/ Lawrence A. Katz, Esq.

LAWRENCE A. KATZ
Counsel for Plaintiff
BEOWULF BUILDING
1814 East Route 70 - Suite 321
Cherry Hill, NJ 08003
Phone: 856.652.2000  EXT 497
Fax: 856.375.1010
Email:  lakatz@lentolawgroup.com

<u>VERIFICATION</u>

Lawrence A. Katz, Esquire, counsel for Plaintiff(s), does hereby verify that the facts set forth in the foregoing pleading are true and correct to the best of his knowledge, information and belief.

     s/ Lawrence A. Katz     

LAWRENCE A. KATZ

<u>CERTIFICATE OF SERVICE</u>

The foregoing document, that was electronically filed, was electronically served **on the Court's e-file distribution list**.

     s/ Lawrence A. Katz     

LAWRENCE A. KATZ
